JUDGE CAPRONI

14 CV 7073-VEC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ALISIA MORRIS

                Plaintiff

    - against -

IOD INCORPORATED AND SOUTH
NASSAU COMMUNITIES HOSPITAL

              Defendants
-----------------------------------------------------------x

CASE NO.

ECF CASE

ELECTRONICALLY FILED

CLASS ACTION COMPLAINT



RECEIVED
SEP 02 2014
U.S.D.C. S.D.N.Y.
CASHIERS

        Plaintiff, by her attorneys, SIMONSON GOODMAN PLATZER PC, brings this action on behalf of herself and all others similarly situated against defendants IOD INCORPORATED (hereinafter referred to as "IOD"), SOUTH NASSAU COMMUNITIES HOSPITAL, (hereinafter referred as "SOUTH NASSAU") and all others similarly situated, and alleges the following upon information and belief:

<u>NATURE OF THE ACTION</u>

    1.    This action is brought by the plaintiff as a class action, on behalf of herself and all others similarly situated, whose joinder in this action is impracticable.  The plaintiff and "qualified persons" acting on her behalf were overcharged by defendants for copies of their hospital and/or medical records (hereinafter referred to as "medical records") in violation of the statutory maximum charges permissible under New York Public Health Law §18, which are not to exceed the actual costs incurred by defendants, and under no circumstances to exceed a maximum charge of seventy-five cents ($0.75) per page.  The defendants and other physicians, hospitals and health care providers as such term is defined in Public Health Law §18, and their agents, have engaged and continue to engage in an ongoing practice overcharging persons such as plaintiffs, for copies of their medical records in excess of the statutorily permissible amounts.

1

2.      The Class so represented by the plaintiff in this action, and of which the plaintiff is a member, consists of any and all persons or entities who requested copies of medical records in the State of New York either personally or through a qualified person, including their legal representatives (as such terms are defined in Public Health Law §18), from defendants and/or any and all other physicians, hospitals and health care providers (hereinafter collectively referred to as "defendants"), and who were charged for those copies fees in excess of the statutory maximum allowable fee of defendants' actual cost as set forth in Public Health Law §18, including but not limited to, fees at, about or in excess of seventy-five cents ($0.75) per page for said records, and who sustained damages as a result of said overcharging by defendants, their agents or representatives.

3.      This class action is brought for, among other things, violation by defendants of Public Health Law §18 which sets forth the maximum amount that is permitted to be charged to persons such as plaintiff and her qualified representatives for copies of her medical records, for violation of the consumer protection laws, for unfair and deceptive trade acts and practices in violation of New York General Business Law §349 et seq., for violation of the common law, and for unjust enrichment, to recover for the damages caused to plaintiff and all those similarly situated by the defendants' conduct as alleged herein, including treble damages and restitution for all excess monies paid by plaintiff and the members of the Class, with interest, attorneys' fees, cost and disbursements.  In addition, because the wrongful conduct herein is continuing, and plaintiffs and the public are being harmed, injunctive and/or other equitable relief to stop such conduct is also respectfully sought.

4.      Pursuant to New York Public Health Law §18, if a patient or qualified person requests a copy of that patient's medical records in writing from a health care provider, the records must be furnished at a reasonable charge not to exceed the actual cost incurred by such provider, and in no event to exceed a maximum of seventy-five cents ($0.75) per page.

5.      At all times relevant herein, plaintiff was a "qualified person" pursuant to New York Public Health Law §18.

6. At all times relevant herein defendant, SOUTH NASSAU, is a hospital or "healthcare provider" or "provider" as those terms are defined in Public Health Law §18.

7. Defendants have charged more than their actual costs for copies of the medical records requested of them by plaintiff and the members of the Class. Defendants have, individually, collectively and/or through the use of agents and associations, engaged in a practice of fixing and charging "standard" or "uniform" fees for such medical records at or about seventy-five cents ($0.75) per page (the absolute maximum or "cap" or "ceiling" rate under the statute), without regard for their actual costs incurred, in violation of said statutes and the public policy of the State of New York.

8. As a result of their wrongful and unlawful conduct, which is continuing, defendants have obtained substantial profits and windfalls and have unjustly enriched at the expense of plaintiff and the members of the Class, who have been and continue to be charged for copies of their medical records in excess of the legally permissible rate and have suffered substantial damages as a result.

9. Defendants have concealed and/or failed to properly disclose to plaintiff, and the members of the Class, numerous material facts including the maximum rate at which the statutes permit them to bill, the factors upon which that maximum statutory rate is based; the actual costs incurred to them of copying the medical records; the fact that the law required and continues to require them to charge fees not exceeding their actual costs incurred and under no circumstances to exceed 75 cent per page; the fact that the charges they actually billed and are billing plaintiff and the members of the Class were, are and continue to be in excess of their actual costs; the fact that said charges violate applicable laws and are illegal; the fact that they have engaged and are engaging in an effort to overcharge plaintiff and the class members and

3

obtain fees furnishing copies of medical records which exceed what is legally permissible in the State of New York; the fact that defendants have, are and continue to be unjustly enriched and obtain a substantial and/or enormous windfall as a result thereof, and other material facts as set forth herein.

10. During all times relevant herein defendants have not calculated the actual cost incurred of fulfilling release of information requests for medical records pursuant to Public Health Law §18.

11. During all times relevant herein defendants actual cost incurred of fulfilling release of information requests for medical records pursuant to Public Health Law §18 was less than .75¢ per page.

12. During all times relevant herein defendants actual cost incurred of fulfilling release of information requests for medical records pursuant to Public Health Law §18 was less than .50¢ per page.

13. During all times relevant herein defendants actual cost incurred of fulfilling release of information requests for medical records pursuant to Public Health Law §18 was less than .25¢ per page.

14. During all times relevant herein defendants are unable to calculate the actual cost incurred for fulfilling the release of information requests for medical records pursuant to Public Health Law §18 on a per request basis.

15. During the period between 2008 and 2014, inclusive, each defendant received and fulfilled more than 500 release of information requests for medical records pursuant to Public Health Law §18 per year.

16. During the period between 2008 and 2014, inclusive, each defendant received and fulfilled more than 1,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

4

17.  During the period between 2008 and 2014, inclusive, each defendant received and fulfilled more than 2,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

18.  During the period between 2008 and 2014, inclusive, each defendant received and fulfilled more than 5,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

19.  During the period between 2008 and 2014, inclusive, each defendant received and fulfilled more than 10,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

20.  During the period between 2008 and 2014, inclusive, defendant, IOD, received and fulfilled more than 500 release of information requests for medical records pursuant to Public Health Law §18 per year.

21.  During the period between 2008 and 2014, inclusive, defendant, IOD, received and fulfilled more than 1,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

22.  During the period between 2008 and 2014, inclusive, defendant, IOD, received and fulfilled more than 2,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

23.  During the period between 2008 and 2014, inclusive, defendant, IOD, received and fulfilled more than 5,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

24.  During the period between 2008 and 2014, inclusive, defendant, IOD, received and fulfilled more than 10,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

25.  During the period between 2008 and 2014, inclusive, each defendant

processed more than 500 release of information requests for medical records pursuant to Public Health Law §18 per year.

26.  During the period between 2008 and 2014, inclusive, each defendant processed more than 1,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

27.  During the period between 2008 and 2014, inclusive, each defendant processed more than 2,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

28.  During the period between 2008 and 2014, inclusive, each defendant processed more than 5,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

29.  During the period between 2008 and 2014, inclusive, each defendant processed more than 10,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

30.  During the period between 2008 and 2014, inclusive, defendant, IOD, processed more than 500 release of information requests for medical records pursuant to Public Health Law §18 per year.

31.  During the period between 2008 and 2014, inclusive, defendant, IOD, processed more than 1,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

32.  During the period between 2008 and 2014, inclusive, defendant, IOD, processed more than 2,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

33.  During the period between 2008 and 2014, inclusive, defendant, IOD, processed more than 5,000 release of information requests for medical records pursuant to Public

Health Law §18 per year.

34.  During the period between 2008 and 2014, inclusive, defendant, IOD, processed more than 10,000 release of information requests for medical records pursuant to Public Health Law §18 per year.

THE PARTIES

35.  At all relevant times herein, plaintiff, ALISIA MORRIS, resides at 1419 Surprise Street, Elmonst, New York 11003.

36.  At all relevant times herein, defendant, SOUTH NASSAU, was and is a hospital located in the County of Nassau, State of New York.

37.  At all relevant times herein, defendant, SOUTH NASSAU, rendered and still renders medical and/or health care treatment to persons in the State of New York.

38. At all relevant times herein, defendant, SOUTH NASSAU, was and is a hospital or health care provider within the scope and meaning of Public Health Law §18.

39.  At all relevant times herein, defendant, SOUTH NASSAU, rendered medical and/or health care treatment to ALISIA MORRIS in the State of New York.

40.  At all relevant times herein, defendant, SOUTH NASSAU, maintained medical records regarding its treatment of ALISIA MORRIS.

41. At all relevant times herein, defendant, IOD, was and is a foreign corporation duly organized and existing under and by virtue of the laws of a state other than the State of New York.

42.  At all relevant times herein, defendant, IOD, was and is a foreign limited liability company duly organized and existing under the by virtue of the laws of a State other than the State of New York.

43.  At all relevant times herein, defendant, IOD, was and is duly licensed to

7

conduct business in the State of New York.

44.  At all relevant times herein, defendant, IOD, was and is engaged in the business of duplicating or copying documents, including medical records, for a fee.

45.  At all relevant times herein, defendant, IOD, was and is engaged in the business of duplicating or copying documents, including medical records, for persons and entities in the State of New York.

46.  At all relevant times herein, defendant, IOD, was and is engaged in the business of duplicating or copying medical records for physicians, hospitals or other health care providers in the State of New York.

47.  At all relevant times herein, defendant IOD, was not, and is not, a hospital or medical doctor.

48.  At all relevant times herein, defendant, IOD, was not, and is not, a "health care provider" or "provider" as those terms are defined in the Public Health Law §18.

49.  Upon information and belief, the defendants were aware of and participated in the wrongful acts alleged herein.

## VENUE AND JURISDICTION

50. This court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. section 1332(d)(2).  Plaintiff is a citizen of the State of New York, and IOD is a citizen of a different state.  The amount in controversy in this action exceeds $5,000,000, and there are more than 100 members of the class.1

51.  Venue is proper in the United States District Court, Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because defendant, IOD, conducts business in this District,

---

1 IOD is the primary defendant in this case for purposes of 28 U.S.C. § 1332(d)(4)(B). IOD has not been sued, within the last three years, in a class action lawsuit involving the same or similar factual allegations as those alleged herein.

and a substantial part of the events and omissions giving rise to the claims occurred in this District.

CLASS ACTION ALLEGATIONS

53.  Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated who comprise the following class (the "Class"):

> All persons including patients, their legal representatives and qualified persons within the scope and meaning of Public Health Law §18, who requested copies of medical records from the defendants herein and/or any other physician, hospital, or health care provider as defined in said statute (hereinafter, collectively referred to as "defendants") in the State of New York, and were billed for said copies a charge in excess of the actual cost incurred by defendants for copying said records including, but not limited to, fees at, about or in excess of the statutory maximum or "ceiling" rate of seventy-five cents ($0.75) per page, and who sustained damages as a result of said overcharging for medical records by defendants, its agents or representatives.

54.  Numerosity: Plaintiff believes that there are thousands of members of the Class as described above, though the exact number and the identities of the Class member are currently unknown. The members of the Class are so numerous that joinder of all Class members is impracticable.

55.  Typicality: Plaintiff's claims are typical of the members of the Class. Among other things: (1) it was typical for IOD to respond to requests for medical records from Plaintiff and other Class members to SOUTH NASSAU and other health care providers in New York; (2) it was typical for Defendants to charge amounts for medical records in excess of the actual cost of producing such medical records; and (3) it was typical for Defendants to fail to disclose the actual cost of producing medical records.

56.  Commonality: Common questions of law and fact exist as to all members of

9

the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are, but not necessarily limited to:

(a) Whether the defendants violated Public Health Law §18;

(b) Whether the defendants charged amounts for medical records in excess of the actual costs of producing such records;

(c) Whether the defendants violated General Business Law §349 et seq. and/or other consumer protection or deceptive trade practices laws;

(d) Whether the defendants' conduct as described herein was deceptive and/or misleading;

(e) Whether the defendants violated the common law by committing the acts alleged herein;

(f) Whether the defendants were unjustly enriched to the detriment of plaintiff and the members of the Class;

(g) Whether plaintiffs and the members of the Class have been damaged and, if so, what is the appropriate measure of such damage;

(h) The appropriateness and proper form of any declaratory or injunctive relief;

(i) Whether treble damages should be imposed against the defendants;

(j) Whether the defendants should be permanently enjoined from charging fees in excess of their actual cost and/or the limit authorized by Public Health Law §18; and

(k) Whether a defendant Class should be established regarding issues common to a multitude of defendants herein.

57.  Plaintiff's claims are typical of the claims of the other members of the Class as the plaintiff and all members of the Class either sustained damages or can reasonably be expected to sustain damages arising out of defendants' conduct as complained of herein.

58.  Adequacy: Plaintiff will fairly and adequately represent and protect the

10

interests of the Class. Plaintiff has retained able counsel. The interests of plaintiff are coincident with and not antagonistic to the interests of the other Class members.

59. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in improper charges for medical records that are readily calculable from Defendants' records and other class-wide evidence. Members of the Class do not have an interest in pursuing separate individual actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single action.

60. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Classes as a whole.

61. Plaintiff intends to send notice to all members or the Class to the extent required by Rule 23. The names and addresses of the Class members are available from Defendants' records.

## REPRESENTATIVE ALLEGATIONS OF NAMED PLAINTIFF

62. At all relevant times herein, the defendants were and still are doing business

11

in the State of New York, including, but not limited to, copying and furnishing copies of medical records to persons and/or entities in the State of New York.

63. As an example of the violations complained of, plaintiff asserts: In or about March 2014, plaintiff, ALISIA MORRIS, by and through her legally authorized representative, Simonson Hess Leibowitz & Goodman, P.C., made a written request of defendant, SOUTH NASSAU, to provide copies of medical records reflecting its treatment of ALISIA MORRIS.

64. During the period inclusive of April 2014, and for some time prior and subsequent thereto, defendant, SOUTH NASSAU, had a contract, agreement or arrangement with IOD, whereby, among other things, defendants would copy and furnish medical records on behalf of SOUTH NASSAU, in response to written requests made to said hospital by patients and qualified persons acting on their behalf, and would bill said persons for copying and forwarding the medical records.

65. Defendant, IOD, was and is the agent of SOUTH NASSAU for the purpose of copying, furnishing and billing for medical records in response to requests made to said hospital by its patients and qualified persons acting on their behalf, including the request of plaintiff.

66. Defendant, SOUTH NASSAU, gave defendant, IOD, express, implied and/or apparent authority to act on its behalf with respect to the copying, furnishing and billing for medical records in response to requests made to said hospital by its patients and qualified persons acting on the behalf, including the request of plaintiff.

67. In responding to requests by patients and qualified persons for copies of their medical records, including the request of plaintiff, defendant, SOUTH NASSAU, gave defendant, IOD, access to, custody, possession and/or control of said persons' medical records.

68. Upon information and belief, the patients and qualified persons acting on their behalf, including plaintiff, ALISIA MORRIS, did not duly authorize defendant, SOUTH NASSAU, to afford outside entities such as defendant, IOD, and/or its employees and

12

representatives, access to, custody, possession and/or control of their medical records.

69. In response to the aforesaid request of plaintiff, ALISIA MORRIS, defendant, SOUTH NASSAU, engaged its agent, IOD, to copy plaintiff, ALISIA MORRIS', medical records, bill plaintiff for said copies and gave IOD access to, possession, custody and/or control of said medical records in connection therewith.

70. On or about April 9, 2014, defendant, SOUTH NASSAU, by and through its agent IOD, responded to plaintiff's request for copies of the medical records and forwarded a bill in the amount of $112.00 for copying 136 pages of medical records. The bill stated that said fee represented $102.00 for the actual copying costs ($.75 per page) and $10.00 for "Certification Fee".

71. Plaintiff, through her attorneys, Simonson Hess Leibowitz & Goodman, P.C. paid said $112.00 bill on or about April 21, 2014.

72. Defendant, IOD, produced these records in electronic format through an online portal.

73. The fee charged to, and received from, Simonson Hess Leibowitz & Goodman, P.C., for furnishing copies of the medical records, was in excess of the actual cost incurred in copying said records, set forth in Public Health Law §18.

74. The fee charged to, and received from, plaintiff for furnishing copies of the medical records, violated Public Health Law §18.

75. Plaintiff, ALISIA MORRIS, requested the aforesaid records from defendant, SOUTH NASSAU, in connection with a personal injury lawsuit bearing New York State Index #005774/13 (Nassau County).

76. Plaintiff, ALISIA MORRIS, incurred an injury in fact, as well as actual damages, due to defendants' violation of Public Health Law §18 at the moment she settled (on or about July 31, 2014) the aforementioned personal injury lawsuit and paid her share of the case

13

disbursements (on or about August 25, 2014) associated with the case, including the copy charges paid to defendants herein.

77. Plaintiff, ALISIA MORRIS, retained, Simonson Hess Leibowitz & Goodman, P.C., to represent her in the aforementioned personal injury lawsuit, specifically a medical malpractice case.

78. Plaintiff, ALISIA MORRIS, executed the aforementioned retainer on or about March 7, 2013.

79. The aforementioned retainer provided that plaintiff, ALISIA MORRIS, would be obligated and responsible for paying disbursements, in accordance with New York State Judiciary Law, in the event of a monetary recovery by way of settlement.

80. As a direct and proximate result of the foregoing, plaintiff suffered damages by, among other things, being caused to pay fees for the medical records in excess of the legally permissible rate.

## ALLEGATIONS APPLICABLE TO DEFENDANTS

81. The above are representative factual allegations.  Upon information and belief, there are a multitude of similar transactions regarding the obtainment of medical records from defendants continuously occurring within the State of New York.  Defendants have constantly, repeatedly and for a substantial period of time charged "standard fees" and other charges in excess of those mandated by Public Health Law §18 to other patients, qualified persons and their authorized legal representatives.  Plaintiffs and the members of the Class have been, are and will in the future continue to be, damaged by the unlawful acts unless the putative Class is awarded the relief sought herein.

82. Defendants, have circumvented the law and public policy of the State of New York by (a) charging fees for copying medical records in response to requests by plaintiff and the members of the Class, which exceed their actual costs; (b) charging "standard" or "uniform" fees

14

at, about or exceeding the statutory maximum or "ceiling" rate of 75 cents per page for copying said medical records, and/or (c) engaging the services of medical records providers and/or copy centers who have continuously and repeatedly overcharged for such records in excess of the actual costs incurred for copying the records, in excess of the fee permitted by the Public Health Law, and even in excess of the fees charged to others for duplication of documents and records.

83.  The medical record providers and/or copy centers engaged by health care providers to copy and furnish medical records in response to requests by plaintiff and the members of the Class, have been, are and continue to be the agents of said defendants with respect to copying and furnishing medical records and billing patients and qualified persons for such copies.

84.  The fees and charges billed by such medical record providers and/or copy centers for copying medical records on behalf of health care providers, have been, are, and continue to be in excess of their actual cost and violative of the Public Health Law §18.

85.  Defendants, individually and through their employees, agents, servants and representatives, owed a duty of due care to plaintiff and the members of the Class to charge and receive fees for copying and furnishing medical records which comply with the requirements and limitations of Public Health Law §18 and other applicable laws; to conform their conduct to the legal requirements; to properly disclose material facts relating to their billing practices with respect to the copying and furnishing of medical records and their actual costs incurred in doing so; and to conduct themselves in a legal, honest and forthright manner.

86.  Defendants, individually and through their employees, agents, servants and representatives, were and are aware of the requirements and limitations set forth in Public Health Law §18 with respect to allowable fees and charges for copying and furnishing medical records in response to written requests by patients and qualified persons.

87.  Despite such awareness, defendants, individually, collectively and through

their employees, agents, servants and representatives, have reaped substantial profits and windfalls, billed, charged and received monies from patients and qualified persons, including the plaintiff and members of the Class, for copying and furnishing medical records which were and are in excess of those permitted by law.

88. Defendant, IOD, made agreements, arrangements or had an understanding with the other defendants to set and fix prices, and/or otherwise charge and receive purported "standard" or "uniform" fees at or about the seventy-five cents ($0.75) per page statutory maximum or "ceiling", rather than a fee based upon defendants' actual cost incurred as required by law, for copying medical records for plaintiff and the members of the Class.

89. Defendants, individually and collectively, made agreements, arrangements or understandings with medical record providers and/or copy centers, including IOD, relative to the copying and furnishing of medical records for plaintiff and members of the Class, which induced, caused or facilitated such entities to charge fees for said medical record copies in excess of their actual copying cost, in excess of the legally permissible fees, and/or in excess of fees that such entities charge to others for duplication of documents and records.

90. Defendants failed to disclose to plaintiff and the members of the Class, material facts such as: the maximum fees they are permitted to charge by law; their actual costs incurred in copying the medical records; the fact that they were charging and receiving fees in excess of their actual costs; the fact that their charges and the monies received exceeded those permissible by law and were incorrect; the fact that they were reaping substantial profits and windfalls as a result of said wrongful and unlawful charges; the fact that they had made agreements, arrangements or understandings amongst themselves and with and through others, to fix prices and circumvent the letter and spirit of the law by charging purported "standard" or "uniform" fees at or about seventy-five cents ($0.75) per page for medical records, rather than the required fee based upon their costs incurred; the fact that they were and are utilizing the copying

16

and furnishing of medical records to patients and/or qualified persons as a business for profit, contrary to the law and public policy of the State of New York; the fact that they were and are utilizing agents such as medical record providers and/or copy centers to effectuate, facilitate and/or conceal the aforesaid conduct and its results; the fact that they had or may have had agreements, arrangements or understandings with such medical record providers, copy centers and/or others, relative to the copying and furnishing of records, which induced, caused or facilitated such entities to charge fees in excess of actual cost, in excess of the legally permissible fees, and even in excess of the fees such entities charge to others for duplication of documents and records; and the fact that defendants' conduct otherwise violated the Public Health Law, consumer protection and deceptive trade acts and practice laws, the common law, and duties and obligations owed to patients and qualified persons acting on their behalf.

91.   The conduct of defendants as aforesaid, including the failure to disclose, was and continues to be a violation of Public Health Law §18 and New York State public policy.

92.   Defendants, individually and collectively, instead of disclosing the fact that they were and are charging fees in excess of their actual costs, in violation of applicable laws, continue to deceive and conceal their wrongful practices from plaintiffs, the members of the Class and the public.

93.   At all times relevant herein defendant, IOD, was a party to an agreement and/or contract with defendant, SOUTH NASSAU.

94.   At all times relevant herein defendant, IOD, was a party to an agreement and/or contract with defendant, SOUTH NASSAU pursuant to which SOUTH NASSAU paid IOD a monthly fee.

95.   The fee paid by the hospital defendant, SOUTH NASSAU to IOD comprises the total amount of the actual cost incurred for copying the records pursuant to Public Health Law §18.

96.  Plaintiff and the members of the Class had the right to expect that defendants were proceeding in a legal, honest and forthright manner with respect to their billing for copying medical records, and that their fees complied with both the letter and spirit of applicable laws.

97.  Plaintiff, their legal representatives and the members of the class justifiably relied upon defendants' invoices and representations to their detriment, and were caused to pay fees for copies of medical records in excess of the maximum fees permitted by law.

98.  Plaintiff and the members of the Class are and remain at risk for being overcharged in connection with future requests for medical records.

99.  As a result of the foregoing, defendants have obtained and continue to obtain substantial profits and windfalls and have been unjustly enriched, while plaintiff and the members of the Class suffered and continue to suffer actual damages and remain at risk for being damaged in the future.

100.  Plaintiff and the members of the Class have no adequate remedy at law to stop such practices.

101.  Plaintiff seeks equitable relief to stop the practice of charging in excess of actual costs and damages on behalf of themselves and all Class members, including reimbursement for any and all damages sustained as a result of the practices described above, with interest, treble damages, attorneys' fees, costs, disbursements and such other relief as the Court and/or trier of fact deems just and proper.

## AS AND FOR A FIRST CAUSE OF ACTION

102.  Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as if more fully set forth at length herein.

103.  The aforesaid conduct by defendants, individually, collectively and through their employees, agents, servants and representatives, violated and continues to violate Public

18

Health Law §18.

104. As a direct and proximate result of the foregoing, plaintiff and the members of the Class have been and continue to be injured financially and damaged by, among other things, being caused to pay for medical records in excess of the fees permitted by law, and are entitled to a refund of all excess monies paid, together with interest accruing from the time of payment, attorneys' fees, costs, disbursements and such other damages permitted by law.

105. Plaintiff and the members of the Class are entitled to compensatory damages as a result of the unlawful and egregious conduct of defendants as set forth above.

106. Based on the foregoing, plaintiff and the members of the Class are entitled to compensatory damages in amounts to be determined by the trier of fact.

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>

107. Plaintiff repeats, reiterates and realleges each and every allegation set forth in preceding paragraphs of this Complaint as if more fully set forth in length herein.

108. The aforesaid conduct by defendants constituted and continues to constitute unfair and deceptive trade acts and practices in violation of New York General Business Law §349 <u>et seq</u>. and other applicable consumer protection laws, rules and regulations.

109. As a direct and proximate result of the foregoing, plaintiff and the members of the Class have been and continue to be injured financially and damaged and are entitled to a refund of all excess monies paid with interest accruing from the time of payment, trebling of the damages, attorneys fees, costs, disbursements and such other damages permitted by law.

110. Plaintiff and the members of the Class are also entitled to compensatory damages as a result of the unlawful and egregious conduct of defendant as set forth above.

111. Based on the foregoing, plaintiff and the members of the Class are entitled to compensatory damages in amounts to be determined by the trier of the fact.

19

### AS AND FOR A THIRD CAUSE OF ACTION

112.  Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as if more fully set forth in length herein.

113.  As a result of their aforesaid conduct, defendants have wrongfully collected from plaintiffs and the members of the Class, amounts of money in excess of those to which they are entitled and limited as charges for providing medical records pursuant to New York Public Health Law §18 and other applicable laws.

114.  The receipt of payments of those excessive, improper and unlawful fees has unjustly enriched, benefitted and created a windfall for defendants, to the detriment and damage of plaintiff and the members of the Class.

115.  Based on the foregoing, plaintiff and the members of the Class are entitled to recover from defendants all damages and costs permitted by law including all amounts to which defendant has been unjustly enriched, with interest accruing from the time of payment, trebling of the damages, costs, disbursements and attorneys fees.

### AS AND FOR A FOURTH CAUSE OF ACTION

116.  Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs "of this Complaint as if more fully set forth in length herein.

117.  Defendants are and continue to engage in the conduct set forth in this Complaint.  Unless restrained and enjoined, they will continue to charge fees for medical records in excess of the amount authorized by statute, and plaintiff, the members of the Class and the public will continue to be damaged.

118.  Plaintiff and the members of the Class have no adequate remedy of law to stop defendants' conduct, rendering equitable relief appropriate in that damages cannot

adequately compensate plaintiffs and the Class for the injuries to be suffered.

119.  Based on the foregoing, plaintiff and the members of the Class are entitled to a judgment declaring that defendants have unlawfully charged amounts for providing medical records in excess of that authorized by law, and enjoining and restraining them from currently doing so and from doing so in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, pray for relief:

(a)  Determining that this action may proceed as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure;

(b)  Appointing Plaintiff as representative of the Class;

(c)  Designating Plaintiff's counsel as counsel for the Class;

(d)  Issuing proper notice to the Class at Defendants' expense;

(e)  Declaring that Defendants' actions, as described above, violate New York Public Health Law § 18;

(f)  Declaring that Defendants' actions, as described above, violate New York General Business Law § 349 et seq.;

(g)  Declaring that Defendants were unjustly and unlawfully enriched at the expense of Plaintiff and the Class members;

(h)  Awarding appropriate equitable relief, including but not limited to an injunction prohibiting Defendants from charging amounts in excess of the actual cost to produce medical records; and ordering Defendants to cease and desist from engaging in further unlawful conduct in the future;

(i)  Awarding actual damages and/or statutory damages to Plaintiff and the Class;

(j)  Awarding treble damages as permitted under New York Gen. Bus. Law § 349 et seq.;

21

(k) Awarding prejudgment interest to Plaintiff and the Class;

(l) Awarding reasonable attorneys' fees and costs and expenses to the extent permitted by New York Gen. Bus. Law § 349 et seq. and other applicable law; and

(m) Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Class demands a trial by jury.

SIMONSON GOODMAN PLATZER PC

By:_____
EDWARD S. GOODMAN, ESQ. (EG8792)
111 John Street, Suite 1400
New York, New York 10038
(212) 233-5001
esg@simonsonlegal.com
Attorneys for Plaintiff and members of the Class